**J.B. DUKE and Raymond Freeman, Appellants,**

v.

**FIRST NATIONAL BANK OF PORT ARTHUR, Appellee.**

No. 09 85 054 CV.

Court of Appeals of Texas, Beaumont.

Sept. 26, 1985.

Donald Kelley, Orange, for appellants.

Robert Meroney, Port Arthur, for appellee.

## OPINION

BROOKSHIRE, Justice.

Suit on a promissory note and security agreement. In a bench trial, the judgment was rendered against J.B. Duke and Raymond Freeman. Duke perfected this appeal.

Although the Appellant's brief is styled "Brief for Appellants J.B. Duke and Raymond Freeman", it appears that the active Appellant arguing for relief is J.B. Duke. Sometime in 1980 Raymond Freeman arranged for the purchase of an eighteen-wheeler rig. He planned that his son would be able and qualified to act as the principal operator of the rig. The First National Bank of Port Arthur financed the transaction. The amount financed, plus the finance charges, exceeded $49,000. Subsequently, it was determined that because of the age of Freeman's son, the son could not operate this vehicle on interstate runs. Later, in 1980, Freeman conferred with his banker, Charles E. Pearson. Freeman requested that the lien against the trailer unit of the rig be lifted so that the trailer could be sold. The funds received from the sale of the trailer would be applied to the balance of the note on the cab. Pearson agreed. Then a new note was executed by Freeman.

Later, J.B. Duke learned that Freeman had an eighteen-wheeler for sale. An agreement was reached between Freeman and Duke. Duke would start making Freeman's installment payments. Duke would,

and did, receive possession of the rig, subject to the bank's lien. The bank was told and Duke was advised by the bank to come in and sign the promissory note and security agreement. On January 23, 1981, Duke signed the same note that had been previously signed by Freeman on September 4, 1980. The installments were $1,178.70. They became delinquent. The bank ultimately took possession of the vehicle; selling the same after obtaining a number of bids. A suit for deficiency was filed.

The written instrument sued on contained many clauses of which we quote only a few:

"COLLECTION COSTS—If this Note is collected by suit or through any court proceedings, then I agree to pay amounts actually incurred by the Bank as court costs and attorney fees assessed by a court. I also agree to pay to the Bank reasonable costs and expenses actually expended by the Bank for repossessing, storing, preparing for sale or selling any Collateral.

"LIABILITY—My personal liability for payment of this Note is not affected by any Collateral. I am liable for all indebtedness and obligations and will continue to be liable for any deficiency that may result if the Collateral is sold after default.

"RIGHTS—Any delay or omission by the Bank in exercising any right under this Note is not a waiver and does not bar exercise of any right.

. . . .

"Each person signing below agrees that the obligations of each are joint and several and acknowledges that a copy of this Note was given to the customer named at left below with all blanks filled in prior to signing. Each also agrees to the provisions on the reverse side of this Note."

J.B. Duke signed the instrument three times, once on the signature line, once immediately below the last quoted provision of the note and on the reverse side of the note.

To the promissory note is attached a written instrument subscribed and sworn to by Raymond C. Freeman that he sold and assigned all of his rights and interest in a 1978 White Cab truck to J.B. Duke of 2207 International Drive, Orange. A second written instrument is attached to the promissory note stating in substance that J.B. Duke agreed to assume the notes of Raymond C. Freeman and also one note in the name of Dale Freeman then presently owing to First National Bank of Port Arthur on a 1978 White Truck. The last, short instrument was signed by J.B. Duke and Raymond C. Freeman.

The Appellant asserts that there was no consideration for Appellant's signature on the note. Both parties affirmatively agreed to waive the jury and to try the fact issues and the law questions before the court.

One Charles E. Pearson was one of the major lending officers at the bank, dealing with consumer loans to individuals. The loan was a consumer loan but for business purposes. Pearson was a senior vice-president. The record demonstrates that he was thoroughly familiar with the circumstances surrounding the lending of the monies to Duke and Freeman.

Duke definitely wanted to obtain the truck from Freeman but the only way Duke would purchase the truck from Freeman was if the bank would allow him to assume the loan made by Freeman. Duke did not want to pay the loan off. Duke, at that time, was working for the County Bank in Orange. Apparently, Duke had had some extensive banking experience. Thereafter, Duke signed the note to assume the obligation of Freeman. Freeman was not released. Duke actually signed the note at the banking house with Pearson witnessing the signature. After Duke signed the note he took over the truck and obtained some nature of assignment or conveyance, to the truck, of the rights, title and interest of Freeman. Duke was, in practical effect, buying the truck. After Duke signed the note and took possession of the truck, there were some regular installment payments made. But, later, the regularly scheduled installment payments fell in arrears. On December 22, 1981, Pearson wrote Duke a letter stating the loan was past due for the months of November and December, and that a third payment would be due on January 5, 1982. The letter addressed to Duke stated, in part:

"You were in banking long enough to realize that any time a note got into the 90-day status that the examiners usually made you charge off this note and file suit if they felt it was warranted. I am writing Mr. Freeman and giving him this same information...."

▆▆▆ We find that the bank, when Freeman first became delinquent, could have declared a default and elected to accelerate the note. Further, we find that the bank was entitled to bring any appropriate legal proceeding. The bank had the right to peacefully and lawfully repossess the truck. The bank had a right to require Freeman to assemble the collateral and make it available to the bank at a place reasonably convenient to the lender. The record shows that the bank exercised forbearance as to each of these rights. We find adequate consideration inuring to the benefit of Duke.

▆▆▆ Later, on March 11, 1982, by letter addressed to Duke and Freeman, Banker Phares, who then represented the bank, stated that their account was 5 months past due. The last payment had been made on September 14, 1981. In that letter demand was made by the bank that Duke and Freeman pay the sum of $33,234.58 within 10 days from the date of the letter.

Before the collateral was sold, the record shows that the bank further cooperated by permitting Duke to have the opportunity of selling the truck for the very highest price obtainable from Duke's own truck sales lot. Duke, apparently, was not successful. Later, the truck was sold for $10,000.00 which credit was properly applied to the note. Under the entirety of this record, we overrule Appellant's first point of error. We find ample and adequate consideration.

Duke expressed a desire that he wanted Freeman to continue to be obligated on the note. This method saved Duke some money. Pearson unequivocally swore that the bank gave up its right to repossess the truck because Duke came in and wanted to buy the truck from Freeman.

Moreover, we find that *TEX.BUS. & COM.CODE ANN. sec. 3.415* (Vernon 1968) provides:

"Contract of Accommodation Party

"(a) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

This present statute, being a part of the Uniform Commercial Code, eliminates the language of old *Sec. 29* of the *Uniform Negotiable Instruments Law*, which required that to be an accommodation party that party must sign the negotiable instruments "without receiving value therefor."

 Under the "Uniform Commercial Code Comment" to *Sec. 3.415*, it is unequivocally stated that the purpose of this section was to make it clear that *Sec. 3.415 a* recognizes that an accommodation party—if that is what Duke was—is also always a surety (which includes being a guarantor). Further, his liability is on the instrument. An accommodation maker or acceptor is bound on the instrument without any resort to his principal. The obligation of the accommodation party was and is supported by any consideration for which the instrument was taken before it was due.

 We find in *V.I.P. Commercial Contractors v. Alkas*, 553 S.W.2d 656 (Tex.Civ. App.—San Antonio 1977, no writ), the court wrote, at page 658:

"If, as he insists, Bass signed the instrument only for the purpose of accommodating the corporate borrowers, *he stands in the position of a surety, even though he is primarily liable on the instrument*, since his liability is subject to no conditions precedent.

"Although accommodation makers are popularly referred to as 'co-makers,' their contract is one of suretyship and should be distinguished from the contract of a joint maker. According to sec. 3.415(a), Tex.Bus. & Comm.Code Ann. (1968), an accommodation party is one who *signs an instrument in any capacity* for the purpose of lending his name to another party to the instrument. According to Comment 1 accompanying this section, an accommodation party 'is always a surety (which includes a guarantor), and it is his only distinguishing feature.' H. Arant Suretyship, sec. 14 (1931); Clark, *Suretyship in the Uniform Commercial Code*, 46 Texas L.Rev. 453, 455–57 (1968)." (Only emphasis added is to lines 3 and 4, first paragraph and lines 6 and 7, second paragraph of this quote.)

Also, under comment 3, accompanying the "Uniform Commercial Code Comment" following *Sec. 3.415*, we find:

"... The party is liable to the holder in such a case even though there is no extension of time or other concession. This is consistent with the provision as to antecedent obligations as consideration (Section 3–408). The limitation to 'before it is due' is one of suretyship law, by which the obligation of the surety is terminated at the time limit unless in the meantime the obligation of the principal has become effective."

Moreover, comment 4 of the same section states:

"As a surety the accommodation party is not liable to the party accommodated; but he is otherwise liable on the instrument in the capacity in which he has signed...."

We conclude that whether Duke would be technically classified as an accommodation party or maker or surety; nevertheless, he is liable on the instrument in this case and failure of consideration is not, under the present law, a defense under this record. *TEX.BUS. & COM.CODE ANN. sec. 3.408* (Vernon 1968). This section provides, in relevant, governing part:

"... [E]xcept that no consideration is necessary for an instrument or obligation thereon given in payment of or

*as security for an antecedent obligation of any kind."* (Emphasis ours)

Pearson granted every request, wish, and desire made known to him by Duke. Duke exercised dominion over and had the use and possession of the truck for a number of months. Duke did pay a series of installment payments but then fell into serious default.

We overrule the Point[s] of Error. We affirm the judgment.

AFFIRMED.